*FOR PUBLICATION*

---

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION**

---

ELIZABETH CRUSE,

    Appellant,

           v.

DERRICK CALLWOOD, and
JENNIFER CALLWOOD

    Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

D.C. Civ. App. No. 2006-71
re: Super. Ct. Small Claims No. 16/2006

---

ELIZABETH CRUSE,

    Appellant,

           v.

CASSANDRA VINCENT and
MIGUEL PEREZ,

    Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

D.C. Civ. App. No. 2006-76
re: Super. Ct. Small Claims No. 17/2006

---

On Appeal from the Superior Court of the Virgin Islands
Superior Court Judge: The Honorable Leon A. Kendall

**Considered: October 30, 2008
Filed: February 2, 2010**

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the
Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of
the Virgin Islands; and **PATRICIA D. STEELE**, Judge of the Superior
Court of the Virgin Islands, Division of St. Croix, sitting by
designation.

ATTORNEYS:

**Rosalie S. Ballentine, Esq.**
St. Thomas, U.S.V.I.
    *For Elizabeth Cruse*

**Sharon Shoenleben, Esq.**
St. John, U.S.V.I.
    *For Derrick Callwood, Jennifer Callwood, Cassandra Vincent,*
    *and Miguel Perez.*

Judge Raymond L. Finch delivers the majority opinion, joined by Judge Patricia D. Steele.

Chief Judge Curtis V. Gómez wrote a dissenting opinion.

---

| **MEMORANDUM OPINION** |
| --- |

Appellant Elizabeth Cruse ("Appellant") appeals a Superior Court judgment of restitution against her in an action for debt. For the reasons that follow, we vacate the Superior Court's decision.

## I. FACTS

On September 15, 2005, Appellees, Derrick and Jennifer Callwood ("Callwoods" or "Appellees"), gave $5,000.00 to Appellant to join a group known as the Women's Gifting Circle ("Circle").[1] On September 25, 2005, Ms. Cassandra Vincent and

---

[1] Although the lower Court's memorandum opinion identifies September 19, 2005, as the date the Callwoods gave the monies, the trial transcript identifies the date as September 15, 2005.

Mr. Miguel Perez ("Vincent" and "Perez" or "Appellees") also gave $2,500.00 each, for a combined total of $5,000 to Appellant to join the Circle. Appellees claim that in consideration of the $5,000.00, they were to receive a total of $40,000.00 in two weeks, as long as they brought an additional contributing member into the Circle. When they did not receive the money, Appellees demanded the return of their monies. Appellant refused.

Appellees filed separate claims in the Small Claims Division of the Superior Court of the Virgin Islands. The cases were heard on February 28, 2006. The court, sitting as a court of equity, found in favor of the Appellees, and entered judgment against Appellant. Appellant filed a motion for reconsideration and a motion to stay, pending appeal. Both motions were denied in an opinion consolidating the cases. This timely appeal followed.

On appeal, Appellant raises two issues: (1) whether the trial court's application of the legal principles of quasi-contract and unjust enrichment was an abuse of discretion and (2) whether the lower court's failure to allow a full presentation of all the facts in this case was an abuse of discretion.

## II. JURISDICTION AND STANDARD OF REVIEW

This is an appeal of a final order of the Superior Court of the Virgin Islands, Small Claims Division. This Court has

jurisdiction to review final judgments and orders of the Superior

Court. *See* Revised Organic Act of 1954 §23A; 48 U.S.C.

§1613(a)(2006); Act No. 6730 § 54(d)(1) (Omnibus Justice Act of

2005). A review for abuse of discretion is warranted when the

lower court's decision rests on a clearly erroneous finding of

fact, an errant conclusion of law or an improper application of

law to fact.[2] *Government of the Virgin Islands v. Innovative*

*Communications*, 215 F. Supp. 2d 603, 606 n.3 (D.V.I. App. Div.

2002) (citing *Oddi v. Ford Motor Co.*, 234 F. 3d 136, 146 (3d Cir.

2000).

"It is the role of the judge in a small claims action to

achieve substantial justice, even if it means that a liberal

reading would afford relief to a *pro se* small claims litigant in

the Civil Division of the Territorial Court." *Fuertes v. Martin*,

Civ. App. No. 2002-217, 2002 WL 31628425, at *3 (D.V.I. App. Div.

---

[2] Generally, the denial of a motion for reconsideration is
reviewed for abuse of discretion. However, because an appeal from
a denial of a motion for reconsideration necessarily raises the
underlying judgment for review, the standard of review varies
with the nature of the underlying judgment." *United States v.*
*Herrold*, 962 F.2d 1131, 1136 (3d Cir. 1992); *see also McAlister*
*v. Sentry Ins. Co.*, 958 F.2d 550, 553 (3d Cir. 1992). Thus, any
legal issues are subject to plenary review, any factual issues
are reviewed for clear error, and any issue ordinarily subject to
review under the abuse of discretion standard will receive such
review. *Bryan v. Todman*, 1993 U.S. Dist. LEXIS 21461 (D.V.I. App.
Div. 1993).

Sept. 4, 2002) (quoting *Ryans Restaurant v. Lewis*, 949 F. Supp.

380, 383 (D.V.I. App. Div. 1996).

### III.  **DISCUSSION**

Here, the trial court found that the Appellees willingly

entered into a pyramid scheme. The court specifically held:

> This whole transaction involves what is commonly
> referred to [as] a pyramid scheme and it is a sad
> commentary in this community when so called
> intelligent people continue to allow themselves to
> be ensnared into this fly-by-night, get-rich
> scheme. Persons like the Plaintiff should be
> aware that it is virtually impossible to invest X
> amount of dollars in anything and expect to get
> eight times your investment within 2 week[s]. It
> doesn't happen.

(J.A. at 41.)

Nonetheless, the trial court, sitting in equity, held that

the Appellees were entitled to restitution of the monies they

knowingly contributed to a scheme that was clearly against public

policy.[3]  We disagree with this result.

---

[3] A pyramid scheme requires funds from new investors to pay
obligations owed to earlier investors. *Harrison v. Dean Witter
Reynolds, Inc.*, 79 F. 3d 609, 613 (7th Cir. 1996).  It requires
an increasing number of new investors to remain afloat and
typically ends in disaster. *Id.* at 613. *See also In re Canyon
Sys. Corp.*, 343 B.R. 615, 630 (Bankr. S.D. Ohio 2006) ("[i]n both
Ponzi schemes and pyramid schemes, the supply of subsequent
investors is eventually exhausted and the scheme collapses, with
the later investors typically losing all of the money that they
invested, and only the earliest investors, if any at all, will
have recovered their investments").

Although Virgin Islands law does not specifically prohibit pyramid schemes, courts have consistently determined that they are against public policy. *Schaffer v. Talerico*, 459 N.Y.S. 2d 716 (1983). If an agreement is injurious to the interests of the public or otherwise interferes with the public welfare, it is against public policy. *Berne Corp. v. Government of the Virgin Islands*, 2004 WL 3211321, at *6 (V.I. Super. Dec. 21, 2004) (citing *Canal Ins. Co. v. Ashmore*, 126 F. 3d 1083 (8th Cir. 1997)).

At their respective hearings, the Appellees testified that they gave the Appellant monies expecting an eight-fold return in two weeks. (J.A. at 22.) The Appellee, in turn admitted to passing the monies on to the Circle's organizers. (J.A. at 47.) As a result, the trial court specifically held that, ". . . the Court can only conclude that the Plaintiffs dealt with Ms. Cruse and Officer Doss at their own risk." (J.A. at 43.) Yet, in direct contravention to its own factual findings, the court concluded that the Appellees were equitably entitled to monies that they voluntarily contributed to a calculated scheme in which they wittingly participated.[4]

---

[4] Unjust enrichment is typically invoked in a quasi-contractual setting, when [a] plaintiff seeks to recover from [a] defendant for a benefit conferred under an unconsummated or void contract." *Steamfitters Local Union No. 420 Welfare Fund v.*

Unjust enrichment is an equitable remedy. The court enjoys broad powers when determining cases in equity. However, the trial court's equitable determinations has boundaries. *Township of East Brunswick v. Transcontinental Gas Pipeline Corp.*, 2008 WL 2627688 (N.J. Super. A.D.)(citing *Graziano v. Grant*, 326 N.J. Super. 328, 342 (App. Div. 1999))(although a judge sitting in a court of equity enjoys broad discretion, equity requires a remedy consistent with the law); *see also In re United Airlines, Inc.*, 428 F. 3d 720 (7th Cir. 2006) ("[e]quity follows the law and, when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies").

Courts cannot enforce a judgment upholding an agreement in law or in equity that is against public policy. *See Parker v. Edghill*, 2003 WL 21973989 (N.Y. Sup. App. Term 2003)(finding that a party who is a knowing and willing participant in an illegal pyramid scheme is not entitled to maintain an action to recover any monies lost as a result of participation in said scheme); *see*

---

*Philip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999). A finding of unjust enrichment requires (1) the defendant was enriched, (2) enrichment came at plaintiff's expense, and (3) equity requires defendant return monies or property to plaintiff. *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 460 (D. V.I. 1997) (citing *Axel Johnson, Inc. v. Arthur Andersen & Co.*, 830 F. Supp. 204, 211 (S.D.N.Y. 1993)).

*also Coyle*, 531 N.Y.S. 2d at 498 (N.Y. Dist. Ct. 1988) (holding that courts will generally not "rescue open-eyes, unsuccessful pyramid scheme participants"); *see also Ford*, 155 Misc. 2d at 194("[i]t is the settled law of this State (and probably of every other State) that a party to an illegal [pyramid scheme] cannot ask a court of law to help him carry out his illegal object. . . for no court should be required to serve as paymaster of the wages of crime, or referee between thieves").

Here, the Appellees knew how the scheme worked before contributing $5,000.00. Both testified that they acknowledged that the Gifting Circle's rules required them to contribute a combined $5,000.00 with the expectation of receiving $40,0000 within two weeks of their initial contribution. Both acknowledged that the Circle's rules also required them to recruit an additional contributing member into the Circle's fold. The evidence before the trial court led it to the well-founded conclusion that the Appellees dealt with the Appellant at their "own risk." (J.A. 43.)

Based on the record, we therefore, cannot support the trial court's equitable judgment of restitution where it found that the

Appellees were aware of the glaringly iniquitous mechanics of this transparent get-rich-quick scheme.[5]

We recognize the deferential abuse of discretion standard afforded to the trial court's factual determinations. *See Oddi*, 234 F.3d at 146. We, however, neither disagree with, nor disturb, those determinations.

Indeed, we agree with the trial court's factual finding that the Gifting Circle was a pyramid scheme. We agree that the Appellees entered into the "far-fetched" scheme with the expectation of a grand return for a respectively small contribution. We also agree with the trial court's factual conclusion that the Appellees dealt with the Appellant at their "own risk". (J.A. at 43.) Where we disagree with the trial court is its determination that a willing participant to a pyramid scheme is entitled, in law or equity, to regain the monies she

---

[5] [W]e have a situation here where the Callwoods put out their money expecting to get back eight times what they put in within two weeks on some scheme that . . . makes absolutely no sense. (J.A. 32, 34.)

knowingly contributed.[6] *See Parker v. Edghill*, No. 2002-880 K C.,

2003 WL 21973989 (N.Y. Sup. App. Term 2003).

The dissent cites several cases where a judgment of

restitution was entered in favor of parties affected by the

inevitable collapse of pyramid schemes. Those cases invariably

concern investors in actions against purported investment firms.

More pointedly, those cases involved innocent investors who

reasonably believed that they were contributing to corporate

enterprises, when in fact, they were innocently and unwittingly

funding pyramid schemes. *See In re United Energy Corp.*, 944 F.2d

589, 595-96 (9th Cir. 1991) (concluding that innocent investors

who were "fraudulently induced", by a solar energy company, to

entering into a "Ponzi scheme" had a claim for restitution to

---

[6] We are also concerned with the trial court's conclusion
that the Appellant was personally responsible for Appellees'
monetary contribution. In *Augustus v. Smith*, we dealt with
similar facts concerning a pyramid scheme. Civ. App. No. 2006-110
(D.V.I. App. Div. August 13, 2008)(for publication). In that
case, the Appellee gave the Appellant $3,000.00 to start what was
characterized as a "family table". *Id*. The idea behind the table
was that an individual would invest a certain amount of money in
hopes of a greater return in the future. *Id*. The trial court
held, and we agreed, that the family table was a pyramid scheme.
*Id*. In *Augustus*, like the case at bar, the Appellant testified
that she passed the money on to the table's organizers. *See id*.
In *Augustus*, we held that the Appellant was not unjustly enriched
because "nothing in the record indicated that [Appellant]
intended to keep the money for herself." *Id*. at 6-9. The facts
of this case are acutely analogous.

prevent unjust enrichment); *Donell v. Kowell* 533 F.3d 762, 772
(9th Cir. 2008) (holding that "innocent" investors in a "Ponzi
scheme" operated by an investment firm acquired a claim for
restitution against that investment firm); *In re
Hedged-Investments Assocs., Inc.*, 84 F.3d 1286, 1289-1290 (10th
Cir. 1996)(acknowledging that an "innocent" investor who gave
money to a corporation which fraudulently perpetrated a "Ponzi
scheme" had a restitution claim against that corporation); *In re
AFI Holding, Inc. v. Mackenzie*, 525 F.3d 700, 708-709 (9th Cir.
2008)(affirming summary judgment order against investor and
remanding to the bankruptcy court with instructions to apply the
good faith exception to its fraudulent transfer determinations).

Contrary to the cases that the dissent relies so heavily
upon, the Appellees in this case were not innocent investors.
Appellees arguably may not have identified the nomenclature of
the Gifting Circle as a "pyramid scheme", but they unquestionably
knew how the scheme worked. As the trial court aptly observed,
the Appellees knew or should have known that "it is virtually
impossible to invest X amount of dollars in anything and expect
to get eight times your investment within 2 week[s]. It doesn't
happen." (J.A. at 41.)

Where a contract to enter a pyramid scheme is concerned, we should protect innocent, unwitting parties. *See, e.g., Ford*, 155 Misc. 2d at 194. Conversely, courts should leave parties who knowingly or willingly enter a pyramid scheme to the consequences of their informed decisions. *Id.* Otherwise, unsuccessful participants to illegal schemes, or schemes against public policy may find vindication in a Virgin Islands court of law.[7] *See, e.g., id.* (where individuals knowingly participate in pyramid schemes, "the law 'will not extend its aid to either of the parties' or 'listen to their complaints against each other, but will leave them where their own acts [] placed them'"). We accordingly, vacate the Superior Court's judgment of restitution and remand for an order, consistent with this opinion.[8]

## IV. **CONCLUSION**

Based on the foregoing, we remand this case to the Small Claims Division of the Superior Court for an appropriate order dismissing the case.

**DATED: December 7, 2009.**

---

[7] Since dismissal of the underlying cases is necessary, we need not reach the Appellant's second argument.

[8] Judge Raymond L. Finch delivers the majority opinion, joined by Judge Patricia D. Steele. Chief Judge Curtis L. Gómez, dissenting.

**GÓMEZ, Chief Judge, *dissenting*.**

At issue is whether the Superior Court abused its
discretion in awarding judgments of restitution in the amount of
$5,000 each to the Derrick and Jennifer Callwood (the
"Callwoods") and to Miguel Perez ("Perez") and Cassandra Vincent
("Vincent") (collectively, the "Appellees"), in connection with
their respective small claims cases against Elizabeth Cruse
("Cruse").[9]

---

[9] "Because careful consideration of particular
circumstances is required in unjust enrichment claims . . . .
the conclusion of the trial court that a party was unjustly
enriched is reviewed for abuse of discretion." *Lewis v. Lewis*,
189 P.3d 1134, 1140 (Colo. 2008); *see also Tri-State Mechanical,
Inc. v. Northland College*, 681 N.W.2d 302, 305 (Wis. App. 2004)
("[A] trial court's decision to grant equitable relief in an
action for unjust enrichment is discretionary . . . ."). "An
abuse of discretion arises when the District Court's decision
rests upon a clearly erroneous finding of fact, an errant
conclusion of law or an improper application of law to fact."
*Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008).

"Unjust enrichment claims require that courts make extensive
factual findings to determine whether a party has been unjustly
enriched." *Lewis*, 189 P.3d at 1140. Such findings will not be
disturbed unless they are clearly erroneous. *Lenhart v. Richards*,
17 V.I. 619 (3d Cir. 1980); *T-Shirt World, Inc. v. Artland, Inc.*,
20 V.I. 147 (D.V.I. 1983). On the other hand, the application of
the facts to the unjust enrichment legal standard is a question
of law that we review *de novo*. *See Superintendent of Ins. v.
Ochs*, 377 F.3d 209, 213 (2d Cir. 2004) (reviewing *de novo* the
legal conclusion as to whether a party has been unjustly
enriched); *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 337
F. Supp. 2d 704, 707 (D.V.I. App. Div. 2004) (explaining that

The majority disagrees with the conclusion of the Superior Court that Cruse would be unjustly enriched if she were not required to return the $5,000 payments she received from the Appellees in each of the two underlying cases.   In the majority's view, the fact that the Appellees willingly participated in the "pyramid scheme" precludes a finding that Cruse has been unjustly enriched by the receipt of the Appellees' monies.   The majority essentially creates a framework whereby a person who is able to successfully convince another to enter into an illegal deal may get a windfall.   Indeed, under the standard created by the majority, the Court would be powerless to re-adjust the equities when one party to an illegal deal makes out better than they should, so long as the other party knowingly agreed to participate.

In my view, the majority confounds the principle purpose of the unjust enrichment doctrine by rewarding a party that is able to hoodwink another into willingly joining an illegal pyramid scheme.   Accordingly, I respectfully dissent.

### THE "PYRAMID SCHEME"

A "pyramid scheme" is

---

legal issues are reviewed *de novo*).

> [a] property-distribution scheme in which a participant pays for the chance to receive compensation for introducing new persons to the scheme, as well as for when those new persons themselves introduce participants. Pyramid schemes are illegal in most states.

Black's Law Dictionary (8th ed. 2004); *see also Harrison v. Dean Witter Reynolds, Inc.*, 79 F.3d 609, 613 (7th Cir. 1996) ("A 'Ponzi' or 'pyramid' scheme is one in which funds obtained from new investors are used to satisfy interest and principal obligations due on earlier investors' notes . . . .").

"Such a scheme requires an ever-larger circle of new investors to keep it afloat, and thus almost invariably ends in disaster." *Harrison*, 79 F.3d at 613; *see also Robertson v. White*, 635 F. Supp. 851, 857 (W.D. Ark. 1986) (noting that pyramid schemes "have invariably collapsed under their own weight"); *In re Canyon Sys. Corp.*, 343 B.R. 615, 630 (Bankr. S.D. Ohio 2006) ("In . . . pyramid schemes, the supply of subsequent investors is eventually exhausted and the scheme collapses, with the later investors typically losing all of the money that they invested, and only the earliest investors, if any at all, will have recovered their investments.").

Given the instability of "pyramid schemes" and the resulting loss that inevitably occurs to the public, agreements to enter

into such schemes are considered against public policy. *See,*

*e.g., Schaffer v. Talerico*, 459 N.Y.S. 2d 716 (Ct. N.Y. 1983)

(finding that pyramid schemes were against public policy); *accord*

*Berne Corp. v. Gov't of the V.I.*, 46 V.I. 106, 115 ("An agreement

is against public policy if it is injurious to the interests of

the public, or contravenes some established interest of society

or some public statute, or is against good morals, or tends to

interfere with the public welfare."). "The Court has a duty to

refuse to enforce a contract that is contrary to public policy

and tends to injure the public good or contravene some

established interest of society." *Berne Corp.*, 46 V.I. at 115.

In both of the underlying cases on appeal, the Superior

Court found the Circle to be a "pyramid scheme." At the

conclusion of the trial in *Callwood v. Cruse*, Super. Ct. No.

16/2006, the judge found:

> [THE COURT]: This whole transaction involves
> what is commonly know as a pyramid scheme . . .
> .
>
> [I]t is virtually impossible to invest X
> amount of dollars in anything and expect to get
> eight times your investment within two weeks. It
> doesn't happen.
>
> . . .
>
> [W]e have a situation here where the
> Callwoods put out their money expecting to get

> back eight times what they put in within two
> weeks on some scheme that . . . makes absolutely
> no sense.

(Trial Tr. 32, 34, *Callwood v. Cruse,* Super. Ct. Small Claims No.
16/2006, Feb. 28, 2006.)

Similarly, after the parties rested at the trial in *Vincent
v. Cruse,* Super. Ct. Small Claims No. 17/2006, the judge found
that Perez and Vincent gave Cruse a total of $5,000 "in return
for the promise of receiving $40,000 within two weeks. As far-
fetched and incomprehensible as that appears, that was the
understanding." (Trial Tr. 56, *Vincent v. Cruse,* Super. Ct. Small
Claims No. 17/2006, Feb. 28, 2006.) Consequently, the Superior
Court concluded that the purported agreements to enter into the
Gifting Circle, which constituted an illegal "Pyramid scheme,"
were void as against public policy.

Indeed, the Gifting Circle at issue in the underlying cases
involved an arrangement by which the Appellees agreed to pay
$5,000 for the chance to receive $40,000 as compensation for
introducing new members to the Circle. The Gifting Circle
requires a constantly increasing pool of members in order to
yield the promised return. As such, the Superior Court correctly
found that the Gifting Circle was an illegal "pyramid scheme."

Consequently, any purported agreements to join in the Circle are void as against public policy.

## UNJUST ENRICHMENT

"The elements for unjust enrichment are that the defendant was enriched, that such enrichment was at the plaintiff's expense and that the circumstances were such that in equity and good conscience the defendant should return the money or property to the plaintiff." *Gov't Guarantee Fund of Republic of Finland v. Hyatt Corp.*, 955 F. Supp. 441, 460 (D.V.I. 1997). "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." Restatement (First) of Restitution § 1 (1936).

Here, the Superior Court in *Callwood v. Cruse* found:

> [THE COURT]: It is clear, based upon the testimony, that, that Ms. Cruse received $5,000 from Mr. Callwood. For whatever reason, he demanded that they return his money because he no longer wanted to be a part of whatever transaction Ms. Cruse was involved in.

> She promised to return his money . . . . He intended to at least get his money back . . . .

> . . .

> If Ms. Cruse were permitted under the circumstances to hold on to the Callwoods' $5,000, that would be a case of unjust enrichment, and she would be getting $5,000 for virtually nothing.

(Trial Tr. 36-37, *Callwood v. Cruse,* Super. Ct. Small Claims No. 16/2006, Feb. 28, 2006.)

The Superior Court in *Vincent v. Cruse* found that Cruse received $2,500 from Vincent and $2,500 from Perez. The judge further found:

> [THE COURT]: [A]fter two weeks elapsed and Plaintiffs had not received their money, Ms. Vincent called Ms. Cruse who admitted receiving the money.
>
> [I]t is clear that the Plaintiffs decided they wanted to get out of this so-called Gifted Circle . . . .
>
> The Defendant failed to repay that money and this Court has no trouble – sitting as a Court of Equity, whose obligation is to see that people are not unjustly enriched – this Court has no problem in finding that the Plaintiffs have proven by a preponderance of the evidence that the Defendant is indebted to them in the amount of $5,000, jointly . . . .

(Trial Tr. 57-58, *Vincent v. Cruse,* Super. Ct. Small Claims No. 17/2006, Feb. 28, 2006.)

The evidence suggests that Cruse, along with her mother and sister, operated the Gifting Circle. For instance, during the trial in *Callwood v. Cruse,* Derrick Callwood testified that "Elizabeth Cruse[] had this organization and that I would have to pay her $5,000 to get back $40,000 . . . ." (Trial Tr. 6,

*Callwood v. Cruse.*)  During that same trial, Derrick Callwood

asked a witness, Elizabeth Doss ("Doss")

> Q: [D]o you know Ms. Elizabeth Cruse?
>
> A: Yes.
>
> Q: On what occasion do you know her . . . .?
>
> A: A friend of mine . . . introduce[d] me to the
> Gifted Circle . . . and Elizabeth Cruse, her
> sister and her mother were the coordinators.

(*Id.* at 14.)

During the trial of *Vincent v. Cruse*, the Court asked Doss:

> THE COURT: . . . . Who is responsible for the
> Women's Gifted Circle?
>
> THE WITNESS: Well, this particular hand was
> Elizabeth Cruse, her mother and her sister.
>
> . . .
>
> THE COURT: Who conducted the [Gifting Circle]
> meetings?
>
> THE WITNESS: Elizabeth Cruse, her mother, and her
> sister.
>
> . . .
>
> THE COURT: Do you know anybody else, other than
> Ms. Cruse, her sister and her[] mother[] ever
> conducted the meeting that you attended?
>
> THE WITNESS: No.

(Trial Tr. 16-18, *Vincent v. Cruse.*)

Although the majority's finds that "[t]he record does not
support a contention that [Cruse] . . . was responsible for
paying out the monies," I disagree.  Indeed, Cruse herself
explained how money invested in the Circle was processed:

> It goes through a process and the process is when
> I receive the money, I give it to the individuals
> and they were processed according to the month
> they got in or whatever and it went in steps
> until the person reached dessert.

(Id. at 46.)  Additionally, there is an abundance of evidence in
the record showing that it was Cruse who personally accepted and
signed for the Appellees' payments, as well as numerous others.

The majority declines to affirm the Superior Court's finding
of unjust enrichment against Cruse, stating that "[t]his Court
cannot enforce a judgment upholding an agreement in law or in
equity that is against public policy." See supra at 7.  As
authority for the proposition that restitution is not available
in cases where the underlying contract is void ab initio as
against public policy, the majority cites exclusively to cases
applying New York law.  That reliance, in the face of Virgin
Islands law to the contrary, is misplaced.

To begin,

> [t]he rules of the common law, as expressed in
> the restatements of the law approved by the
> American Law Institute, and to the extent not so

> expressed, as generally understood and applied in
> the United States, shall be the rules of decision
> in the courts of the Virgin Islands in cases to
> which they apply, in the absence of local laws to
> the contrary.

V.I. Code Ann. tit. 1, § 4.

Section 197 of the Restatement (Second) of Contracts

("Section 197") states the general rule that, "[e]xcept as stated

in §§ 198 and 199, a party has no claim in restitution for

performance that he has rendered under or in return for a promise

that is unenforceable on grounds of public policy unless denial

of restitution would cause disproportionate forfeiture."

Restatement (Second) of Contracts § 197.

Pursuant to the Restatement (Second) of Contracts § 198

("Section 198"):

> A party has a claim in restitution for
> performance that he has rendered under or in
> return for a promise that is unenforceable on
> grounds of public policy if
>
> . . .
>
> (b) he was not equally in the wrong with the
> promisor.

*Id.* at § 198.

Additionally, the Restatement (Second) of Contracts § 199

("Section 199") provides that

> A party has a claim in restitution for
> performance that he has rendered under or in

> return for a promise that is unenforceable on
> grounds of public policy if he did not engage in
> serious misconduct and
>
> . . .
>
> (b) allowance of the claim would put an end to a
> continuing situation that is contrary to the
> public interest.

*Id.* at § 199.

Thus, it is clear that, in a variety of circumstances

falling within an exception to the general rule stated in Section

197, a party may be entitled to restitution, even where the

underlying contract was void *ab initio* as against pubic policy.

Indeed, the applicable Virgin Islands law specifically makes

restitution available *as a matter of public policy*, where, as

here, there is an unenforceable promise. The facts of this case

fall squarely within the exception outlined in Section 198(b),

for parties to illegal contracts who are not equally in the wrong

with the promisor.

As comment b to Section 198 explains, the exception outlined

in Section 198(b) is often applied in cases where "the claimant

is regarded as being less in the wrong because the public policy

is intended to protect persons of the class to which he belongs

and, as a member of that protected class, he is regarded as less

culpable." The majority arrives at its conclusion without

considering, or even referring to the Restatement. In my view, that approach fails to adequately consider the relevant law and removes the legal support necessary to undergird the majority opinion.

The record in this case reveals that the Appellees in each of the underlying cases paid Cruse $5,000 to join the Gifting Circle. That is, Cruse received $5,000 at the expense of the Callwoods, and $5,000 at the expense of Vincent and Perez. At the time the Appellees made such payments, the Gifting Circle operated as an illegal "pyramid scheme," and there is no doubt that Cruse, as the Circle's organizer, knew how the scheme functioned. Admittedly, the Appellees' decision to contribute to the Gifting Circle was unwise. Yet, while gullible regarding the expectation of a high return for their contributions, the Appellees are not in the same category of fault as the organizer, who solicits and preys on the gullible.

When the initial $5,000 investments failed to yield any return, the Appellees requested a refund from Cruse. To allow Cruse to keep that money under these circumstances turns the notion of "crime does not pay" on its head. Indeed, it would be tantamount to rewarding Cruse's predatory conduct. Moreover, the public policy against "pyramid schemes" such as the Gifting

Circle is intended to protect innocent investors such as the
Appellees in this case. It is not intended to protect organizers
of such schemes who prey on the public to find participants to
help perpetuate such illegal enterprises. I fear that the result
reached by the majority yields a contrary result.

In my view, the Superior Court correctly concluded that
equity and good conscience require that Cruse return to the
Appellees the amount of their initial investments. Indeed, the
wealth of authority on this point is overwhelming. *See, e.g., In
re AFI Holding, Inc.*, 525 F.3d 700, 708 (9th Cir. 2008)
(recognizing that an investor in a corporation which operated as
a "Ponzi scheme" acquired a restitution claim against that
corporation); *Donell v. Kowell* 533 F.3d 762, 772 (9th Cir. 2008)
(holding that innocent investors in a "Ponzi scheme" operated by
an investment firm acquired a claim for restitution against that
investment firm); *In re Hedged-Investments Assocs., Inc.*, 84 F.3d
1286, 1289 (10th Cir. 1996) (acknowledging that an individual who
gave money to a corporation which perpetrated a "Ponzi scheme"
had a restitution claim against that corporation); *In re United
Energy Corp.*, 944 F.2d 589, 595-96 (9th Cir. 1991) (concluding
that investors in a "Ponzi scheme" operated by a solar energy
company acquired restitutions claims against that company).

Finally, although the majority disagrees with the Superior

Court's conclusion, it has not shown that such conclusion rested

upon any clearly erroneous findings of fact, errant conclusions

of law, or improper application of law to fact. The majority

appears to overlook the fact that the Superior Court's

determinations that Cruse had been unjustly enriched in the

underlying cases were discretionary. See Lewis v. Lewis, 189 P.3d

1134, 1140 (Colo. 2008); Tri-State Mechanical, Inc. v. Northland

College, 681 N.W.2d 302, 305 (Wis. App. 2004). A discretionary

decision by a trial court "is reversible only for abuse of

discretion." Titus v. Mercedes Benz of N. Am., 695 F.2d 746, 751

(3d Cir. 1982). "[R]eversal is not warranted merely because the

reviewing court would have exercised discretion differently."

Id.; see also, e.g., United States v. Hoffecker, 530 F.3d 137,

196 (3d Cir. 2008) (holding that, in reviewing the reasonableness

of a defendant's sentence under an abuse-of-discretion standard,

"[w]e may not reverse a district court's sentence simply because

we would have imposed a different sentence"); United States v.

Universal Rehab. Servs., Inc., 205 F.3d 657, 665 (3d Cir. 2000)

(explaining that a trial court's discretionary decision to admit

evidence "cannot be reversed merely because we, as members of a

reviewing court, possess a different view concerning the

probative value or prejudicial effect of the challenged evidence"
(quotation omitted) (en banc).

By substituting its own discretion for that of the trial
judge, the majority has applied an inappropriately stringent
standard of review to the Superior Court's unjust enrichment
rulings.  In my view, because there is nothing in the record to
suggest that the judgments below were based on clearly erroneous
factual findings, errant legal conclusions, or improper
application of law to fact, there is no basis to hold that the
Superior Court abused its discretion in awarding judgments of
restitution to the Appellees in the amount of their initial
$5,000 investments.

Accordingly, I would affirm the Superior Court's judgments
below.[10]

_____

[10]  I acknowledge that, to the extent my dissenting opinion
concludes that the circumstances of this case justify a finding
that Cruse was unjustly enriched, it conflicts with this Court's
opinion in *Augustus v. Smith,* D.C. Civ. App. No. 2006-110 (D.C.
App. Div. Aug. 13, 2008).  In that case, Monique Augustus
("Augustus") had given Jasmine Smith ("Smith") money to
participate in a "family table."  After receiving no return on
her investment, Augustus sued Smith in the Superior Court,
seeking the return of her money.  The Superior Court dismissed
Augustus' case, and Augustus appealed.  On appeal, this Court
found that the "family table constituted an illegal "pyramid
scheme," but that Smith had not been unjustly enriched because
there was no evidence that she retained control over the money
after receiving it from Augustus. *See id.* at 5-7.  Like the
majority opinion in this case, the Court in *Augustus* found it

---

inappropriate to "aid a party who knowingly entered into a
"table" or pyramid scheme that is against public policy." *Id.* at
6.  After carefully revisiting that decision, I agree with the
Court's classification of the "family table" as an illegal
"pyramid scheme."  However, I believe that *Augustus* was wrongly
decided insofar as it disregards relevant Virgin Islands law with
respect to the issue of a party's entitlement to restitution when
the underlying contract is void as against public policy.

The Court in *Augustus* also placed inappropriate emphasis on
what Smith did with the money after she obtained it from
Augustus.  *Augustus* essentially creates a test for unjust
enrichment that hinges upon what the allegedly unjustly enriched
party did with the money or property in question after receiving
it unjustly at the expense of the opposing party.  Under this
standard, a defendant may not be unjustly enriched absent a
finding that she ultimately retained control of the money or
property in question.  In my view, *Augustus* imposes an
inappropriate prerequisite to a finding of unjust enrichment.
Indeed, the Court in *Augustus* does not provide, and I am unaware
of, any valid legal authority to support the imposition of such a
prerequisite to an unjust enrichment claim.  Rather, I believe
that the unjust enrichment analysis should turn on whether the
defendant has received a benefit at the expense of another, not
on whether the defendant ultimately retains control over such
benefit. *See Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000)
(explaining that the essence of an unjust enrichment claim "is
that one party has received money or a benefit at the expense of
another" (quotation omitted)).  Furthermore, as discussed above,
several courts hold that innocent investors in illegal "Ponzi
schemes" acquire restitution claims against the parties who
operate such schemes, up to the amount of the principal
investment. *See, e.g., In re AFI Holding, Inc.,* 525 F.3d at 708;
*Donell v. Kowell*  533 F.3d at 772; *In re Hedged-Investments
Assocs., Inc.,* 84 F.3d at 1289; *In re United Energy Corp.,* 944
F.2d at 595-96.

I believe this Court should rehear the *Augustus* case, and
reverse the Superior Court's decision in *Augustus.*